**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:25-cr-00005** |
| **MICHAEL JAIME INOFUENTES,** | ) | **The Honorable Patricia T. Giles** |
| | ) | |
| **Defendant.** | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | **ON MARCH 20, 2025 at 9:00 a.m.** |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MICHAEL INOFUENTES'**
**OPPOSED MOTION TO REVOKE THE DETENTION ORDER**

For the below-stated reasons, the Detention Order, ECF No. 18 (Nov. 8, 2024) ("Detention Order"), should be revoked because there are conditions of pre-trial release that will both assure Mr. Inofuentes' appearance at trial and protect the community. The Court should therefore revoke the Detention Order and impose whatever conditions of release, including one or more of the below-referenced proposed conditions, that it deems fit in this case.

## I.    SUMMARY OF THE ARGUMENT

No justifiable basis exists to detain Mr. Inofuentes pending trial. First, the relevant statutory factors – even in light of the presumption for detention – cut in favor of Mr. Inofuentes' pre-trial release. Mr. Inofuentes is charged with *attempting* to engage in illicit sexual conduct, not in this community but entirely outside the United States. Even more, the indictment rests upon a legally uncertain foundation: March 27, 2024 electronic messages between Mr. Inofuentes and Individual-1 in which the two allegedly discuss commercial sex. The evidence as-yet reviewed indicates that Mr. Inofuentes never met Individual-1 that evening, let alone had any physical

contact with her that night, before their discussion ended for no apparent reason. Such discussions will be challenged as insufficient to prove attempt as a matter of law.

Even more, Mr. Inofuentes intends to move to suppress these same electronic messages as impermissibly obtained during a warrantless border search of his iPhone. If successful, both the underlying messages and Mr. Inofuentes' statements about the messages during custodial interviews with agents must be suppressed. Absent this evidence, the purported evidentiary foundation for the indictment disappears. Put simply, Mr. Inofuentes should not be subjected to pre-trial detention to defend himself against a charge that may not be viable.

Even if these issues did not exist, pre-trial detention would still not be warranted. Mr. Inofuentes will not flee. He has lived in and around the District for almost the entirety of his adult life of 44 years. He has significant ties to the community, including a young son in the District, numerous family members in and around the District, and close ties to local religious organizations. These family members (two of whom are practicing attorneys and the other who is a long-standing professional) will undertake whatever measures the Court deems appropriate on behalf of Mr. Inofuentes. His ties to the community are therefore substantial and undercut any argument that he will not appear in this case.

Mr. Inofuentes also does not pose a threat to anyone in the District. The charged offense, although a felony, is an attempt and is based on communications and alleged conduct in Colombia. There is no allegation that the charged conduct was ever directed towards anyone in the United States. Whatever minimal risk Mr. Inofuentes poses to this community can therefore be addressed by Court-imposed conditions.

Mr. Inofuentes therefore respectfully submits that the Court should revoke the Detention Order. To that end, Mr. Inofuentes has proposed below a fulsome set of conditions of release and

stands ready to submit to these conditions, along with any other the Court deems appropriate in this case.

## II. **LEGAL STANDARD**

After the entry of a detention order by a magistrate judge in the arresting jurisdiction, Mr. Inofuentes may file a "motion for revocation or amendment of the order" with the Court "having original jurisdiction over the offense[.]" 18 U.S.C. § 3145(b). In this case, Mr. Inofuentes' motion is properly before the Court, which should review the Detention Order *de novo*. *See United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989); *United States v. Stewart*, 19 Fed. App'x 46, 48 (4th Cir. 2001) (citation omitted). This motion should be determined promptly. *See* 18 U.S.C. § 3145(b).

A detention order runs contrary to the norm of "society liberty" and is the "carefully limited exception" to release pending trial. *United States v. Salerno*, 481 U.S. 739, 755 (1987). Put another way, "[t]he default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Taylor*, 289 F. Supp. 3d 55, 62 (D.D.C. 2018) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)).

The Bail Reform Act of 1984 ("Bail Reform Act") authorizes pre-trial detention only where the court finds "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Mr. Inofuentes has the opportunity to rebut the presumption that there are no conditions or combinations of conditions that warrant his pre-trial release. *See* 18 U.S.C. § 3142(e)(3)(E) (citing the charged offense of 18 U.S.C. § 2423). On this front, Mr. Inofuentes carries the minimal burden of production. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (noting that the defendant's burden to introduce some evidence contrary to the presumed fact "is not heavy"); *accord United States v. Davis*, 449 F. Supp. 3d 532, 534 (D. Md. 2020). Once

produced, the government carries the burden of persuasion.  *See Stone*, 608 F.3d at 945 (collecting cases).

In evaluating whether the government has met its burden of persuasion justifying pre-trial detention, the Court must evaluate four factors:  (1) "the nature and circumstances of the offense charged"; (2) the "weight of the evidence against the person"; (3) the "history and characteristics of the person";[1] and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g); *Stone*, 608 F.3d at 945-46 (instructing that the presumption in favor of detention for the enumerated offenses remains a factor in the analysis).

In weighing these factors, the Court must only order detention on the basis of dangerousness if the government proves as much by "clear and convincing evidence."  *United States v. Vane*, 117 F. 4th 244, 251 (4th Cir. 2024).  To justify the same on the basis of risk of flight, the Court must make the appropriate finding based on a preponderance of the evidence.  *Id.* Regardless of the basis for pre-trial detention, the Court has a "grave constitutional obligation to ensure that the facts and circumstances of each case warrant [the] exceptional treatment [of pre-trial detention]."  *United States v. Munchel*, 991 F.3d 1273, 1284-85 (D.C. Cir. 2021).

III.    **BACKGROUND**

On November 5, 2024, Mr. Inofuentes was arrested in the District on a complaint. ECF No. 1.  On the same date, Magistrate Judge Davis entered a Temporary Detention Order.  ECF No. 9.  Following the November 8, 2024 detention hearing on the complaint, Magistrate Judge Davis entered the Detention Order.  ECF Nos. 17-18.  On January 8, 2025, a grand jury in this District

---

[1] These factors are enumerated in 18 U.S.C. § 3142(g)(3)(A)-(B).

returned a one-count indictment against Mr. Inofuentes, charging him with illicit sexual conduct in a foreign place. ECF No. 25. Mr. Inofuentes remains detained.

Mr. Inofuentes is charged with *attempting* to engage in a commercial sex act with a person under the age of 18 years old (Individual-1). *See* Ind. (charging attempt or sub-section (f) of Section 2423). The underlying alleged conduct did not occur in this District or anywhere else in the United States. Instead, it allegedly occurred *outside* the United States. It also involved Individual-1, who was approximately 16 years old and living in Colombia, where it is believed Individual-1 still resides. Based on the discovery as-yet reviewed, there is no indication of any aggravating factors in this case, such as Mr. Inofuentes' possession of child pornography, engaging in physical violence or otherwise engaging in non-consensual sexual activity.

The case against Mr. Inofuentes rests primarily upon a warrantless border search of Mr. Inofuentes' electronic device (an iPhone). On November 1, 2024, and upon Mr. Inofuentes' re-entry to the United States in Miami, Florida, agents from Homeland Security Investigations ("HSI") conducted a warrantless "border search" of Mr. Inofuentes' iPhone. Agents from HSI apparently had in their possession information indicating that Mr. Inofuentes had made sporadic payments ranging between $13 and $47 in October 2023 to another individual allegedly associated with sex trafficking.[2] The HSI agents, based on the as-yet reviewed evidence, had no additional context about these payments, which occurred more than a year before Mr. Inofuentes' border search in Miami.

---

[2] It is presently unclear to undersigned counsel whether the at-issue payments were made to an individual charged with sex trafficking or an individual who is associated with another charged with sex trafficking. Mr. Inofuentes has requested this information, among other information, in a discovery letter to the government.

During the warrantless search, Agents discovered hundreds of electronic messages between Mr. Inofuentes and Individual-1, exchanged while both were in Colombia.[3]  Among those were messages between Mr. Inofuentes and Individual-1 on March 27, 2024, that, according to the government, show Mr. Inofuentes was attempting to pay Individual-1 for sex.  The government has no evidence that Mr. Inofuentes ever met Individual-1 around the time of these messages, let alone had any sexual contact with her on this day.

Based on the agents' warrantless search of his iPhone, Mr. Inofuentes was interrogated in Miami for several hours about the contents of his iPhone and other topics.  After approximately eight hours, Mr. Inofuentes was released and allowed to continue his travel back to the District.

On November 4, 2024, Mr. Inofuentes was scheduled to leave the District out of Dulles Airport and fly to Colombia.  HSI Agents from Miami requested that HSI agents in this District conduct another border stop of Mr. Inofuentes.  He was again questioned about the electronic messages with Individual-1 that were obtained from his iPhone based on the warrantless border search in Miami.  Following that questioning, agents conducted a probable-cause arrest of Mr. Inofuentes for a violation of Section 2423(c) & (g)(2).  Following his arrest and after twice questioning Mr. Inofuentes about the contents of his iPhone, agents obtained an "anticipatory" search warrant from this Court for the same iPhone, among other electronic devices.

The as-yet reviewed evidence indicates that the charged attempt rests upon two pieces of evidence:  the messages obtained during a warrantless border search of Mr. Inofuentes' iPhone and his custodial interviews about those messages during separate border stops in Miami and in the

---

[3] Mr. Inofuentes has similarly requested from the government information about the HSI agents' search of his iPhone.

District.  There is no evidence as-yet reviewed that agents have interviewed Individual-1 about her interactions with Mr. Inofuentes.

IV.   **ARGUMENT**

Based on the statutory factors of the Bail Reform Act, Mr. Inofuentes poses neither a risk of flight nor a danger to the community.  The Court should therefore revoke the Detention Order and order his release subject to any of the below-referenced conditions that the Court deems necessary in this case.

A.   **The Nature and Circumstances of the Offense Cut in Favor of Release**

Mr. Inofuentes is charged with a felony:  illicit sexual conduct in a foreign place.  It bears underscoring, however, that the current charge against him is for *attempt* and relates to a single alleged victim, who was sixteen years old at the time (and above the age of consent in Colombia) and interacted with Mr. Inofuentes in Colombia.  Absent is *any* allegation of any coercive or violent conduct by Mr. Inofuentes, or of any effort by Mr. Inofuentes to flee or obstruct the investigation.  Quite the opposite, Mr. Inofuentes agreed to submit to multi-hour interviews with HIS Agents on two separate occasions.  Mr. Inofuentes does not discount the gravity of the charge against him.  But he does seek to distinguish the nature and circumstances of his offense from other defendants who may have faced similar charges under this statute.

The attempted crime charged against Mr. Inofuentes rests upon the electronic messages between Mr. Inofuentes and Individual-1 that were obtained from the warrantless border search of his iPhone.  Those messages from one day – March 27, 2024 – reveal late-night discussion between Mr. Inofuentes and Individual-1 about money and allegedly about sexual topics, while both were in Colombia.  But the discussion that evening did not escalate into any sexual activity.  Indeed, the government does not have any as-yet reviewed evidence that Mr. Inofuentes and Individual-1 ever met around the time of these messages.  These messages between Mr. Inofuentes and Individual-

7

1 therefore relate to chatter that ultimately came to nothing for no apparent reason on this occasion.[4]

Mere discussion about illicit conduct, however, cannot support an attempt charge. Attempt requires proof of "(1) a culpable intent to commit the crime charged and (2) a substantial step towards the completion of the crime that strongly corroborates that intent." *United States v. Neal*, 78 F.3d 901, 906 (4th Cir. 1996). Here, the indictment charges criminal attempt based on messages with Individual-1 but no substantial step by Mr. Inofuentes to proceed at all. There is no evidence that Mr. Inofuentes took any concrete action to meet with Individual-1 or otherwise tried to engage in any sexual activity with Individual-1. Indeed, the conversation between Mr. Inofuentes and Individual-1 appears to have ended on its own with no further activity.

Such evidence is the shakiest of foundations for a criminal attempt. *Id.* (citing *United States v. Delvecchio*, 816 F.2d 859, 862 (2d Cir. 1987) ("[A] verbal agreement alone, without more, is insufficient as a matter of law to support an attempt conviction"); *see also United States v. Bernhardt*, 903 F.3d 818, 829 (8th Cir. 2018) (vacating conviction for attempt under Section 2423(b), (e) because the government proved only mere preparation to travel but "not the sort of conduct that 'would have resulted in a crime' if 'it had not been extraneously interrupted'") (citation omitted); *see also United States v. Gladish*, 536 F.3d 646, 650 (7th Cir. 2008) (highlighting how "[t]reating speech (even obscene speech) as the 'substantial step' would abolish any requirement of a substantial step . . . [and how] [t]he requirement of proving a substantial step

---

[4] There are other messages between Individual-1 and Mr. Inofuentes that the government will likely argue are indicative of a sexual relationship between Mr. Inofuentes and Individual-1. But the crime for which Mr. Inofuentes is charged is attempted *commercial* sex with Individual-1, which did not occur on the date of the above-referenced messages. Mr. Inofuentes intends to defend himself against the government's likely characterization of his relationship with Individual-1.

serves to distinguish people who pose real threats from those who are all hot air"); *accord United States v. Nitschke*, 843 F. Supp. 2d 4, 14-15 (D.D.C. 2011) (granting the defendant's motion to dismiss an indictment charging an attempt to violate Section 2422(b) in spite of sexual communications because of the lack of a requisite "substantial step"). At the very least, this legal question undercuts an argument that Mr. Inofuentes should be detained. *See* 18 U.S.C. § 3142(g)(2).

Beyond the legal issues with the indictment, nothing in the indictment indicates that any of Mr. Inofuentes' conduct was directed at any time towards anyone in the United States. Quite the opposite, his charged conduct relates to Individual-1 while both were in Colombia. There is also no as-yet reviewed evidence indicating any of the traditional aggravating factors exist in this case. As currently understood, Mr. Inofuentes was not in the possession of any child pornography. Nor is there any evidence that Mr. Inofuentes was physically abusive towards Individual-1 or otherwise used force to engage in any sexual conduct. Thus, the factors that traditionally and rightly justify pre-trial detention under this statute are not present here.

The charge against Mr. Inofuentes is factually and legally unique such that the Court should revoke the Detention Order. The fact that the present charge is one of attempt was never put before Court at the prior detention hearing. Indeed, the complaint alleged the commission of an illicit sex act. The Detention Order therefore appears to have been based in part on a charge that has since been abandoned for that of attempt.

With the benefit of a more robust record about the nature and circumstances of the offense, the Court should revoke the Detention Order.

**B. The government's legal theory will be challenged as legally insufficient as a matter of law, and its evidence as collected in violation of the Fourth Amendment**

Mr. Inofuentes also intends to challenge the evidentiary basis for the charged offense. The foundation of the case – absent any testimony from Individual-1 – rests on messages searched and seized from Mr. Inofuentes' iPhone during a warrantless border search and custodial interviews about those same messages. Mr. Inofuentes intends to challenge promptly the border search of his iPhone as a violation of his Fourth Amendment rights. If successful, those messages must be suppressed. It necessarily follows that his custodial statements about those messages would also be suppressed as fruit of the poisonous tree.

As noted above, HSI agents in Miami conducted a warrantless search of Mr. Inofuentes' iPhone and seizure of his electronic messages based on isolated payments without context to another individual potentially under investigation for sex trafficking. These payments were for various amounts between $13 and $47 in October 2023, more than one year before Mr. Inofuentes' warrantless border search in Miami.

Based on the as-yet reviewed evidence, these isolated payments were the sole justification for stopping Mr. Inofuentes at the border, searching his electronic devices without a warrant, and engaging in a prolonged custodial interrogation of him in Miami. In both his Miami interview and follow-up interview in the District, the agents relied extensively on messages and photos obtained from the warrantless search of Mr. Inofuentes' iPhone to guide their questioning and interrogation of Mr. Inofuentes.

Mr. Inofuentes intends to challenge the warrantless border search of his electronic devices in light of Fourth Circuit precedent. In *United States v. Aigbekaen*, 943 F.3d 713 (4th Cir. 2019), the court found that "warrantless, nonroutine forensic searches" of a defendant's electronic devices violated the Fourth Amendment. *Id.* at 723. In doing so, the Court highlighted how such invasive

10

searches, which have the potential to unearth "vast quantities of uniquely sensitive and intimate personal information," must be justified by more than a "generalized interest in law enforcement and combatting crime." *Id.* at 721. Instead, the search must be justified by individualized suspicion of an offense "that bears some nexus to the border search exception's purposes of protecting national security, collecting duties, blocking the entry of unwanted persons, or disrupting efforts to export or import contraband." *Id.* Because the border search of the defendant's electronic devices was "unmoored" to those considerations, the Court found that the warrantless border search violated the Fourth Amendment. *Id.*

Based on this precedent and other decisions, Mr. Inofuentes intends to move to suppress both the messages derived from the warrantless search of his iPhone, as well as his custodial statements based on those messages. If successful, the government's case has no evidentiary support and should be dismissed.

Given the significant suppression issues and their import to the viability of the indictment, the Court should therefore decline to hold Mr. Inofuentes at this time. To do so would pose a grave injustice, especially when he poses no risk to the community and reasonable conditions can secure his appearance at trial.

C. **Mr. Inofuentes' history and characteristics demonstrate he is not a flight risk**

Mr. Inofuentes is a long-time resident of this District. He has reputable family members in and around this District, as well as substantial ties to the community. Mr. Inofuentes' history and characteristics therefore cut in favor of revoking the Detention Order. The Court should be confident he will appear for all proceedings.

11

Mr. Inofuentes was born and raised in the District. He attended Wakefield Forest Elementary School, Frost Middle School, and W.T. Woodson High School. For the overwhelming majority of Mr. Inofuentes' 44 years, he has lived in the District, and without major incident.[5]

He has an ex-wife who still resides in the District with Mr. Inofuentes' minor son, with whom Mr. Inofuentes has a close relationship. Mr. Inofuentes plays a major role in raising his son, had seen his son on a regular basis before his detention, and is active in his son's extracurricular activities in the District, including his music, sports, and religious activities. Mr. Inofuentes' role as an attentive father to a minor in this District should give the Court confidence that he does not pose a threat to anyone in the community.

Mr. Inofuentes also has parents who are in and around the District and are upstanding, reputable professionals. Mr. Inofuentes' biological parents divorced in the early 1990s, and both remarried. Both sets of parents continued to live near one another in and around the District so that Mr. Inofuentes could attend both school and his neighborhood synagogue from either his mother's or his father's home. His mother and his step-father are practicing attorneys and officers of the court. *See* Exs. 1 & 2 (CVs of Mr. Inofuentes' biological mother and step-father). Mr. Inofuentes has a healthy relationship with both individuals. They stand ready to assist in whatever conditions of the release the Court may impose on Mr. Inofuentes.

Mr. Inofuentes' biological father also lives in the District where he has worked as a professional with IBM for 46 years. He has been deemed a suitable third-party custodian by pre-

---

[5] Mr. Inofuentes' history with the justice system, as noted in the detention hearing, contains sporadic traffic infractions, and one criminal charge that was ultimately dismissed. None was within the past five years and there was never a conviction for driving on a suspended license as relied on by the magistrate judge as an indication of Mr. Inofuentes' character. In any event, these are not the types of offenses that should lead the Court to believe he is either a flight risk or poses a credible, articulable risk to the community.

trial services and is willing to serve in that capacity for Mr. Inofuentes. *See* Ex. 3 (CV of Mr. Inofuentes' biological father). Mr. Inofuentes' biological father and his wife – a now-retired Fairfax County Public School teacher for over 30 years – have agreed to provide housing for Mr. Inofuentes under any condition of release the Court would impose, including home confinement. Volunteering such a condition speaks volumes about Mr. Inofuentes' character and support from his family.

Beyond his family in the District, Mr. Inofuentes also is active in his community. For most of his life, Mr. Inofuentes has participated with his family in religious and charitable activities in the metro-DC area. He grew up in the Mantua neighborhood synagogue of Congregation Olam Tikvah, became a bar mitzvah there in 1993, and his family now attends Agudas Achim in Alexandria where Mr. Inofuentes' son attends 5th grade Hebrew school studies and is scheduled to become a bar mitzvah.

A rabbi in the Fairfax County Mantua neighborhood religious community has undertaken to support Mr. Inofuentes if he is able to be released pre-trial. The synagogue is in the same neighborhood in this District where Mr. Inofuentes grew up and is also near the residence of Mr. Inofuentes' biological father. The rabbi has undertaken to provide for Mr. Inofuentes regular in-home study visits by rabbis or volunteer educators and spiritual advisors, and the community is also ready to welcome Mr. Inofuentes to their men's-only study groups at the synagogue itself, should the Court allow Mr. Inofuentes' short travel to the center.

Mr. Inofuentes' connections to the District, and the surrounding community, are therefore significant and undercut any suggestion that he is a flight risk.

Mr. Inofuentes is also a gifted, classically trained musician. He was coached by the Asst. Principal Trumpet of the National Symphony, performed with the National Symphony's Youth

Philharmonic, earned his bachelor's at the New England Conservatory of Music, and won a seat to study with the premier trumpeter of one of the top orchestras in Europe for graduate study. Given his multicultural background, Mr. Inofuentes also specializes in both klezmer and mariachi repertoires and is an in-demand local musician.  Throughout his work career, regardless of his professional day job at any given time, he has supplemented his income with performances as a soloist in DC-area churches, especially on Christmas and Easter.

To that end, being a member of a mariachi band is not irresponsible, as it was made to sound at the detention hearing.  *See* Ex. 4, Detention Hearing (Nov. 8, 2024), Tr. at 23.  Rather, it demonstrates a dedication to his talent, as well as a diligent effort to bring in additional income.

Mr. Inofuentes has sought to maintain steady, professional employment throughout his adult life, which since 2010 has been primarily in domestic and international logistics, sales, and marketing.  *See* Ex. 5 (CV of Mr. Inofuentes).  His employment has generally been long-term in nature, and it is only his most recent assignment that was a temporary contract position in educational services. *Cf.* Tr. at 40-41.  There is scant evidence, if any, in Mr. Inofuentes' work history that indicates he is a risk of flight in light of the aforementioned connections to the District. *Cf.* Tr. at 41.

Further, to the extent that the Court previously detained Mr. Inofuentes on the stated basis that Mr. Inofuentes in light of his financial circumstances "will not follow the orders of this Court," Tr. at 40-41, it adopted the wrong standard.  The legal standard is whether a combination of conditions will "reasonably assure" Mr. Inofuentes' appearance, not whether the set of conditions will guarantee compliance.  *See, e.g.*, *United States v. Xulum*, 84 F.3d 441, 443 (D.C. Cir. 1996). Similarly, to the extent the Court has concerns about Mr. Inofuentes' driving history, *see, e.g.*, Tr.

at 40, he is amenable to a condition of release that prohibits his operation of a motor vehicle. This condition is a more reasonable, less restrictive approach than pre-trial detention.

Mr. Inofuentes is not a mere passer-by in the District. His ties to the District are real and substantial. He respectfully submits that the Court should have confidence that pre-trial release is proper based upon his personal characteristics.

### D. **Mr. Inofuentes does not pose a threat to the community**

There is no evidence that Mr. Inofuentes engaged in any misconduct in the United States. The charged conduct relates exclusively to activities and discussions outside the United States. As such, there are no facts showing that Mr. Inofuentes poses "an identified and articulable threat to an individual or the community." *Salerno*, 481 U.S. at 751.

To the extent the Court has any concerns on this front, Mr. Inofuentes will submit to any conditions of release that the Court deems appropriate. Indeed, Mr. Inofuentes proposes below a fulsome package of conditions that should give the Court confidence in revoking the Detention Order. Such conditions are more than sufficient to serve all interests in this case.

### V. **Mr. Inofuentes' Proposed Conditions of Release**

In light of the foregoing statutory factors, Mr. Inofuentes respectfully submits that the following conditions of release will reasonably assure his appearance at trial and protect the community. To that end, Mr. Inofuentes respectfully requests that the Court impose any of the following conditions, as well as any additional conditions, that it deems fit:

- **Secured Bond**: A $200,000 appearance bond, secured by $10,000 in cash. The cash will be provided by Mr. Inofuentes' parents.

- **Surety bond**: Mr. Inofuentes' parents are willing to be responsible for the unsecured portion of Mr. Inofuentes' appearance bond.

- **Fixed Residence with a custodian**:  Mr. Inofuentes would live in the District with his biological father.

- **Curfew**:  Mr. Inofuentes hopes to be released so that he can work closely with his attorneys to prepare his defense in this case.  Although he hopes to be free to travel from the District to the District of Columbia for that purpose, he is also prepared to submit to a curfew.  *See* 18 U.S.C. § 3142(c)(1)(B)(vii).

- **Home confinement with electronic monitoring**: Mr. Inofuentes is prepared, if necessary, to submit to home confinement in the District at the residence of his biological father with electronic monitoring.

- **Any other conditions**:  Mr. Inofuentes would abide by any other conditions Pre-Trial Services deems appropriate and any other conditions the Court deems necessary.

These conditions, or some combination of these conditions, are also in line with what other courts have found be reasonable conditions to justify pre-trial release pending trial.  *See, e.g.*, *United States v. Burgess*, Criminal No. 2:17-CR-153, 2017 WL 6542939 at **7-14 (E.D. Va. Dec. 19, 2017) (granting a motion to revoke a detention order as to a defendant charged with various sex offenses because of his years of living in the community and the availability of a suitable third-party custodian, among other conditions); *see also United States v. Bendann*, Case No. JKB-23-0278, 2023 WL 5806108 at **7-8 (D. Md. Sept. 7, 2023) (similar order revoking a detention order for a defendant charged with sex crimes because of the availability of a suitable third-party custodian, among other "stringent" conditions).

## VI.    CONCLUSION

For the foregoing reasons, Mr. Inofuentes respectfully submits that the Court should revoke the Detention Order in this case.  There are conditions of release that will both assure his appearance at trial and protect the community from whatever minimal risk he may pose.  Revoking the Detention Order therefore serves the interests of justice and the purposes of the Bail Reform Act.

Dated:  March 3, 2025                    Respectfully submitted,

                                        MICHAEL JAIME INOFUENTES
                                        By Counsel

                                        /s/_____
                                        Nina J. Ginsberg, Esquire
                                        Virginia State Bar No. 19472
                                        Greenspun Shapiro Ginsberg & Yang PC
                                        3955 Chain Bridge Rd., Fl. 2
                                        Fairfax, VA 22030
                                        Phone: (703) 352-0100
                                        Fax: (703) 591-7268
                                        Email:  njg@greenspunlaw.com

                                        Scott Armstrong, Esquire
                                        McGovern Weems, PLLC
                                        1050 15th Street, Suite 1030, NW
                                        Washington, D.C. 20005
                                        DC Bar No. 993851
                                        (admitted *pro hac vice*)
                                        Telephone: (202) 978-1267
                                        Email: scott@mcgovernweems.com

                                        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3RD day of March, 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to counsel of record.

                                        /s/_____
                                        Nina J. Ginsberg